IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 JUN 13 PM 3: 58
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ Cl\_____
         DEPUTY

JUAN CARLOS AGUILAR DIAZ,
                    Movant,

-vs-                                                    Case No. A-14-CA-109-SS
                                                        [No. A-11-CR-026(9)-SS]
UNITED STATES OF AMERICA,
                    Respondent.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Movant Juan Carlos Aguilar Diaz's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [#415], Respondent United States of America's Response [#422], and Movant Aguilar's Reply [#424]. Having considered the documents, the file as a whole, and the governing law, the Court enters the following opinion and orders DENYING the motion.

### Background

On January 18, 2011, Juan Carlos Aguilar Diaz was charged by way of indictment with one count of conspiracy to possess with intent to distribute and to manufacture 100 or more marijuana plants in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.[1] On October 14, 2011, Aguilar and two others proceeded to trial by jury and were found guilty on October 21, 2011. On December 22, 2011, Aguilar was sentenced to a term of sixty months, the statutory minimum. Aguilar filed a direct appeal to the Fifth Circuit, and his conviction was affirmed on June 19, 2013.

---

[1] Other defendants were charged in a separate count with conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h), and a superseding indictment was filed on April 5, 2011, which had no effect on the charges against Aguilar.

*United States v. Clark-Gonzalez*, 530 F. App'x 372 (5th Cir. 2013) (unpublished), *cert. denied*, 134 S. Ct. 456, 187 L. Ed. 2d 305 (2013). The United States Supreme Court denied his petition for a writ of certiorari on October 21, 2013.

On February 3, 2014, Aguilar filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. In his motion, Aguilar alleges he was denied effective assistance of counsel because his attorney: (1) did not allow him to testify at trial; (2) failed to file a motion in limine to exclude evidence; and (3) failed to file a Rule 33 motion for new trial and challenge the jury's finding that Aguilar conspired to possess or distribute 100 or more plants of marijuana.

## Analysis

### I.   Legal Standard

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the District Court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). In addition, a defendant who raises a constitutional or

jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default, and "actual prejudice" resulting from the error. *Placente*, 81 F.3d at 558.

## II. Application

### A. Ineffective Assistance of Counsel

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

#### 1. Denial of right to testify

Aguilar first contends his counsel, Bradley Urrutia, prevented him from testifying at trial. It is well established a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth, and Fourteenth Amendments to the Constitution. *See Rock v. Arkansas*, 483 U.S. 44, 51–53 (1987); *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007). When the petitioner alleges his counsel, not the court or the State, prevented him from testifying, the "'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'" *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001) (quoting *United States v. Brown*, 217 F.3d 247, 258–59 (5th Cir. 2000)). A defendant can only waive his right to testify if the waiver is knowing, intelligent, and voluntary. *Bower*, 497 F.3d at 473 (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)). A violation

of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'" *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994) (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990), *reh'g granted*, 953 F.2d 1525 (11th Cir. 1992)). "[The Fifth Circuit] has repeatedly held there is 'a strong presumption that counsel's decision not to place [a defendant] on the stand was sound trial strategy.'" *Bower*, 497 F.3d at 473 (quoting *Sayre*, 238 F.3d at 635).

A habeas petitioner has the burden of proving he was denied this constitutional right. It is not enough for a habeas petitioner merely to state he told his trial attorney he wanted to testify, and his attorney forbade him from doing so. *See Turcios v. Dretke*, No. Civ. A. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475–76 (7th Cir. 1991)). In *Underwood*, Judge Posner explained why the mere assertion by a petitioner his attorney prevented him from testifying is insufficient:

> There is a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right that is not waivable by counsel) to testify in his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say: "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." That's what Underwood did. His affidavit, which is the only evidence bearing on the question, states, so far as pertinent here, "I was denied the opportunity to testify at my own trial in that I told my attorney that I wished to testify on my own behalf. My attorney told me I could not testify."
>
> We agree with the First Circuit's ruling in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), that this barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood*, 939 F.2d at 475–76. The Fifth Circuit has cited favorably to *Underwood* in finding vague and conclusory assertions alone insufficient to trigger a hearing or response from the government. *See United States v. Martinez*, 181 F.3d 627, 628–29 (5th Cir. 1999) (citing *Underwood*, 939 F.2d 473 at 475–76).

In this case, Aguilar presents only his affidavit in which he claims he told his attorney he wanted to testify in order to tell the jury "[his] side of the story," but his attorney told him he would "walk out of the case" if Aguilar took the stand. *See* Mot. Vacate [#415-1], Aguilar Aff. Aguilar provides no other evidence, such as any statements at trial or at sentencing, indicating either his desire to testify or his attorney's refusal to let him do so. While the mere fact Aguilar failed to stand up in open court and insist on testifying should not be dispositive, he must provide more to the Court than his own self-serving statement. *See United States v. Mullins*, 315 F.3d 449, 455 (5th Cir. 2002); *United States v. Araujo*, 77 F. App'x 276, 278 (5th Cir. 2003) (unpublished).

Aguilar also fails to show he was prejudiced by the alleged obstruction to him taking the stand. Aguilar indicates he wanted a chance to tell the jury his side of the story. Specifically, he would have told the jury: (1) he was traveling to Austin because he was promised a higher paying job as a truck driver by Lazaro Ruiz in a company owned by Ruiz's friend; (2) he became acquainted with Abel Otano and his wife, Olermi Roya, through Ruiz; (3) he provided his personal information to Roya for the purposes of the truck driver position because Roya handled contracts for the truck company; (4) he was unaware his personal information was being misused by Otano; (5) he was unaware Otano and Ruiz were involved in a marijuana conspiracy or that they were growing

marijuana in Texas; and (6) he had been erroneously implicated in a conspiracy, and he is therefore innocent of the crime charged. See Mot. Vacate [#415], at 4.

This proffered testimony does not address what the Government represents would have been the primary subjects of cross examination, including: (1) his ten phone calls to Ruiz the day of the stop, see Trial Tr. Vol. 3 [#395], at 215–16 & Gov't Ex. 3Q; (2) phone calls to Otano, id.; (3) his rental, in cash, of a recreational vehicle (RV) from Austin, id., at 208–10 & Gov't Ex. 30AD; (4) his claim he received the wrong RV, which the Government calls an attempt to obstruct justice; (5) his statement, captured by patrol car video, that "they're going to get me for sure,"see Trial Tr. Vol. 2 [#394], at 9; (6) the link between him and Otano through tracing the title of a BMW provided by Aguilar to Otano, see Trial Tr. Vol. 4 [#396], at 30 & Gov't Ex. 12H; and (7) the observation of Heber Morales departing a known "grow" house on Tuffit Lane and meeting with Aguilar in October 2010, id. at 41.

Aguilar fails to meet his burden on his claim he was prevented by his lawyer from tesfifying on his own behalf and fails to overcome the presumption that Urrutia's decision not to place Aguilar on the stand was sound trial strategy. In addition, Aguilar fails to establish the outcome of his case would have been different if he testified. Accordingly, this claim is DENIED.

2.   **Failure to file a motion in limine to exclude evidence**

Second, Aguilar contends Urrutia's performance was deficient for failing to file a motion in limine to exclude testimony and evidence pertaining to the Mississippi arrest where he was found in possession of approximately thirty-three pounds of marijuana. According to Aguilar, this was the only evidence introduced which allowed the jury to infer Aguilar had knowledge of or somehow was connected to the conspiracy. Aguilar claims this was an unrelated prior arrest with insufficient

connection to the charged offense and was more prejudicial than probative. Aguilar argues Urrutia should have filed a motion to limine to exclude this evidence and objected to it as irrelevant.

First, Aguilar fails to show Urrutia was deficient for failing to file a motion in limine. For the same reasons described in Part II(A)(1), there was evidence connecting this traffic stop in Mississippi to the broader conspiracy involving Ruiz and Otano. Aguilar completely ignores this connection in contending the incident was unrelated to the charged offense. Moreover, the superseding indictment in this case alleged the conspiracy began "in or about 2008," so this traffic stop occurred within this alleged timeframe. The Court fails to see how any motion in limine on this issue could have been successful. Furthermore, "[a] conscious and informed decision in trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003) (internal quotations omitted). Aguilar does not demonstrate Urrutia's decision not to file a motion in limine rises to this standard.

Second, Aguilar fails to establish he was prejudiced by Urrutia's failure to file a motion in limine. As described above, there are good reasons to believe this motion would have been denied because of its tendency to show whether Aguilar was involved in the conspiracy. In addition, even if the motion had been granted, this does not "exclude" the evidence as Aguilar seems to believe. Granting a motion in limine only means the Government must gain the specific approval of the judge prior to offering the evidence. Therefore, the evidence concerning the Mississippi arrest may have been admitted by the Court notwithstanding any prior granting of a motion in limine.

Accordingly, Aguilar's § 2255 motion with respect to this claim is DENIED.

### 3. Failure to file a Rule 33 motion for new trial and challenge the jury's finding that Aguilar conspired to possess or distribute 100 or more plants of marijuana

Third, Aguilar contends Urrutia's performance was deficient for failing to file a Rule 33 motion for new trial. Relatedly, Aguilar argues Urrutia was ineffective for failing to challenge the sufficiency of the evidence concerning a finding of conspiracy and that the conspiracy involved 100 or more plants of marijuana.

Federal Rule of Criminal Procedure Rule 33 states: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." A district court's decision to grant or deny a motion for new trial pursuant to Rule 33 is reviewed for an abuse of discretion. *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997). This standard is necessarily deferential to the trial court because the appellate court has only read the record and, unlike the trial court, did not see the impact of witnesses on the jury or observe the demeanor of the witnesses. *Id.* The "interest of justice" may be based on the trial judge's evaluation of witnesses and weighing the evidence. *Id.* at 898. A trial court should not grant a motion for new trial unless there would be a miscarriage of justice or the weight of the evidence preponderates against the verdict. *Id.* In collateral review cases, the term "miscarriage of justice" means the conviction of one who is actually innocent. *United States v. Wall*, 389 F.3d 457, 466 n.4 (5th Cir. 2004) (citing *United States v. Olano*, 507 U.S. 725, 736 (1993)).

In contending Urrutia should have filed a Rule 33 motion for new trial, Aguilar argues Urrutia should have essentially asserted the same grounds he urged to the Court in his Rule 29 motion for judgment of acquittal at the close of the Government's case and again re-urged at the close of the evidence. *See* Trial Tr. Vol. 4 [#396], at 150, 152, 172–73. Urrutia argued the

Government had not met its burden in connecting Aguilar to the conspiracy and had not connected the traffic stop in Mississippi where Aguilar was found with thirty-three pounds of marijuana to the grow operations in Austin. *Id.* at 152. The Court denied the motion at the close of the Government's case, stating there was enough evidence to convict all three defendants on the conspiracy and again denied the renewed motion at the close of the evidence. *Id.* at 158, 172–73. Despite this clear ruling by the Court, Aguilar asserts Urrutia was ineffective for not making the same arguments in a Rule 33 motion. In so doing, Aguilar once again ignores the evidence presented at trial (described above in Part II(A)(1)) connecting the events in Mississippi to the operations in Austin. "Counsel is not required to pursue every path until it bears fruit or until all conceivable hope withers." *Govett v. Florida*, 627 F.2d 706, 708 (5th Cir. 1980). Furthermore, "'the Sixth Amendment does not require that counsel do what is impossible.'" *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998) (quoting *Chronic v. United States*, 466 U.S. 648, 656 n.19 (1984)). Aguilar fails to establish Urrutia was deficient in failing to file a motion and challenge the sufficiency of the evidence when these actions were sure to fail.

Second, Aguilar does not demonstrate prejudice for the same reasons. He offers no explanation why a Rule 33 motion would have been granted when Urrutia's Rule 29 motion, argued on the same grounds as Aguilar claims he should have argued a Rule 33 motion, was denied twice. Finally, the Court notes the Fifth Circuit affirmed Aguilar's conviction and rejected his sufficiency of the evidence argument, instead concluding "[t]he evidence of Aguilar's knowledge of and voluntary participation in the conspiracy sufficiently supports the verdict." *Clark-Gonzalez*, 530 F. App'x at 377.

Accordingly, Aguilar's § 2255 motion with respect to this claim is DENIED.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Aguilar's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, a certificate of appealability shall not be issued.

## Conclusion

Accordingly,

      IT IS ORDERED that Movant Juan Carlos Aguilar Diaz's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [#415] is DENIED;

      IT IS FINALLY ORDERED that a certificate of appealability is DENIED.

SIGNED this the 13th day of June 2014.

                                          */s/ Sam Sparks*
                                          SAM SPARKS
                                          UNITED STATES DISTRICT JUDGE